**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Richard I. Valenzuela,<br><br>        Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>        Respondents. | CV 10-0471-TUC-FRZ (JR)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Richard I. Valenzuela's Amended Petition for Writ of Habeas Corpus (Doc. 5) filed pursuant to 28 U.S.C. § 2254.  In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation.  As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, deny the Petition with prejudice.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

By Information filed August 29, 2006, Valenzuela was charged in Cochise County Superior Court case number CR2006-00589 with six felony counts of attempted murder, robbery, burglary, and aggravated assault. *Answer*, Ex. B.  On

1

1  May 21, 2007, Valenzuela pled guilty to first-degree burglary, in exchange for which
2  the State dismissed the remaining charges. *Id*., Ex. C (Plea Agreement); Ex. D
3  (Sentencing Minute Entry); Ex. L, pp. 2-10 (transcript). On June 18, 2007, the trial
4  court sentenced him to a stipulated prison term of 11.5 years and ordered him to pay
5  $7,404.49 in restitution. *Id*., Ex. E (Sentencing Minute Entry). Pursuant to the plea
6  agreement, Valenzuela waived his right to direct appeal. *Id*., Ex. C, p. 3.

7  On June 28, 2007, Valenzuela initiated a state post-conviction relief (PCR)
8  proceeding by filing a Notice of Post-Conviction Relief. *Id*., Ex. F. Petitioner then
9  filed a PCR petition and an accompanying memorandum in which he alleged that (1)
10 the restitution order constituted an illegal sentence that violated his rights to due
11 process, and (2) the plea agreement was not knowingly, intelligently and voluntarily
12 made and he therefore should have been permitted to withdraw his plea. *Id*., Ex. G
13 (Petition); Ex. H (Memorandum). By Order dated April 23, 2009, the trial court
14 rejected Valenzuela's claims and dismissed the petition. *Id*., Ex. J.

15 Valenzuela filed a petition for review raising the same two issues he raised
16 before the trial court. *Id*., Ex. K. By Memorandum Decision dated November 13,
17 2009, the Court of Appeals granted review, but denied relief. *Id*., Ex. A. No petition
18 for review by the Arizona Supreme Court was filed and Valenzuela initiated this case
19 on August 3, 2010 with the filing of his original petition.

20  . . .
21  . . .
22  . . .

## II. LEGAL DISCUSSION

### A. The Amended Petition is timely.

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one year statute of limitations to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Petitions filed beyond the one-year limitations period must be dismissed. *Id.* The statute provides in pertinent part that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In this case, Valenzuela pled guilty to a non-capital offense and waived his right to a direct state appeal. A.R.S. § 13-4033(B). He did, however, have the right

to pursue state post-conviction relief proceedings, which when properly filed constitute "direct review" for AEDPA limitations purposes. *See* Ariz.R.Crim.P. 32.1 (non-capital pleading defendant has right to pursue post-conviction relief proceeding); *Summers v. Schriro*, 481 F.3d 710, 711 (9th Cir. 2007) (Rule 32 "of right" proceeding constitutes "direct review" for § 2244(d)(1)(A) purposes).

Here, Valenzuela was obligated to raise his claims in a Rule 32 of-right proceeding within 90 days after the entry of judgment and sentence. Ariz.R.Crim.P. 32.4(a). Applied to Valenzuela, this meant that he was required to initiate a Rule 32 petition of-right proceeding 90 days after his June 18, 2007 sentencing. Valenzuela initiated his state PCR proceeding on June 28, 2007, well within the time for doing so. Thus, the AEDPA limitation period began to run on November 13, 2009, when the Arizona Court of Appeals denied his petition for review. The instant action was filed on August 3, 2010, well-within the one year AEDPA limitations period.

### B. The claims are exhausted.

A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999). Exhaustion occurs either when a claim has been fairly presented to the highest state court, *Picard v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999). A claim has been "fairly presented" if the petitioner has described the operative facts and legal theories on which the claim is based. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995). The operative facts must be presented in the appropriate context to satisfy the exhaustion requirement. The fair presentation requirement is not satisfied, for example, when a claim is presented in state court in a procedural context in which its merits will not be considered in the absence of special circumstances. *Castille*, 489 U.S. at 351. An exact correlation of the claims in both state and federal court is not required. *Rice,* 44 F.3d at 1403. The substance of the federal claim must have been fairly presented to the state courts. *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir. 1994) (citations omitted).

Here, Valenzuela presented to the Arizona trial and appellate courts the two claims he now asserts in his federal habeas petition. *See Answer*, Exs. I & J. Thus, the Court can review the merits of his claims.

**B.     The claims are meritless.**

**1.     Standard of review**

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2)

1 based on an unreasonable determination of the facts in light of the evidence presented
2 in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120
3 S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1)
4 if it fails to apply the correct controlling authority, or (2) if it applies the controlling
5 authority to a case involving facts "materially indistinguishable" from those in a
6 controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212
7 F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state court decision is
8 contrary to federal law, the court must examine the last reasoned decision of a state
9 court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101
10 (9th Cir. 2002).

**2.     Grounds One and Two of the Petition are meritless.**

In Ground One, Valenzuela contends that his guilty plea was not knowing and voluntary.  He claims that he was under the influence of medication and misunderstood the terms of the plea agreement.  He specifically claims that he was unaware of the amount of restitution that could be imposed, and did not understand the implications of agreeing to a "stipulated" sentence, and would not have entered into the agreement if he had understood the terms.

Valenzuela entered his guilty plea on May 21, 2007.  At the hearing, upon inquiry from the court, Valenzuela indicated that he read, spoke and understood the English language and represented that he had not had any drugs, alcohol or prescription medication that would affect his ability to understand the proceedings.  *Answer*, Ex. L (change of plea hearing transcript), p. 2.  The felony burglary charge

6

1 to which he was pleading was described to him and he indicated that it was his
2 intention to plead guilty. *Id*., pp. 2-3. He said he had met and conferred with his
3 lawyer about the agreement and understood all of its terms and conditions. *Id*., p. 3.
4 Valenzuela then indicated that he was satisfied with the advice his lawyer had given
5 him. *Id*., pp. 3-4.

6 The court then turned to the substance of the agreement and asked Valenzuela
7 if he understood that the agreement called for a mandatory prison sentence and
8 provided that he "shall be sentenced to 11 and-one-half years in the Department of
9 Corrections." Valenzuela responded, "Yeah, I do." *Id*., pp. 4-5. Valenzuela also
10 affirmatively recognized that the court could impose a fine of up to $150,000.00. *Id*.,
11 p. 5.

12 Next, the court reviewed with Valenzuela the rights he was giving up by
13 entering into the plea agreement. The court explained to Valenzuela that he had the
14 right to go to trial, to be represented by an attorney, to present evidence and examine
15 and cross-examine witnesses, and the right to testify or remain silent. *Id*., pp. 6-7.
16 Valenzuela indicated that he understood his rights and chose to waive them and plead
17 guilty. *Id*., p. 7. Then, after reciting the factual basis of the charge and finding that
18 Valenzuela's plea was knowingly, voluntarily, and intelligently made, the court
19 accepted the plea of guilty to charges of burglary in the first degree. *Id*., p. 10.

20 About a month later, on June 18, 2007, Valenzuela appeared for sentencing.
21 After the court stated for the record that Valenzuela had previously plead guilty and
22 that the court had accepted the plea, Valenzuela's counsel informed the court that

7

despite counsel's belief that it was a "good plea agreement," Valenzuela wanted another attorney so he could get "a second opinion regarding the plea agreement and the motion to withdraw from the plea agreement." *Answer*, Ex. M (sentencing transcript), p. 3. Valenzuela then spoke directly to the court:

> I really believe that, that I didn't understand the plea agreement at first. That's why I signed it. I was in a state of confusion. But I think I deserve a fair, a fair case to a trial. And I think my counsel was uneffective; and we got a conflict of interest. So that's why I asked what I wrote down on paper there, for I could be excused from this plea agreement.

*Id*., p. 5. Upon hearing this, the court noted that Valenzuela had already plead guilty and stated that Valenzuela "knew what was happening" at sentencing and that the court found no reason not to proceed with sentencing. *Id*.

The court then asked for the state's position. The state then raised a request contained in the Pre-Sentence Report (PSR) for restitution in the amount of $7,404.49, with $2,200.00 going to the victim and $5,204.49 to AHCCS/Mercy Care. *Id*., pp. 6 & 8. No objection was made to the imposition of the restitution order, and the court proceeded to impose the stipulated sentence of 11.5 years along with the requested order of restitution in the amount of $7,404.49. *Id*., p. 8.

Valenzuela subsequently filed a PCR petition in which he claimed that at the time the plea was offered he "was on medications that affected his thinking and judgment," that his attorney pressured him into accepting the agreement, and that he was promised that "he would be able to hold his daughter and he would [be] assigned to a three yard at prison." *Answer*, Ex. H, p. 3. He also asserted that he did not

8

1 understand the meaning of the term "stipulation," and believed that the agreement
2 provided that he could be sentenced to as few as three years. *Id.*, p. 4. Finally, he
3 claimed that he would not have entered into the agreement if he had known that he
4 would be ordered to pay $7,404.49 in restitution. *Id.*

5       In its order dismissing the PCR petition, the trial court noted that it had
6 observed Valenzuela's demeanor during the court hearings and found them
7 appropriate. The court further noted that Valenzuela, at both his change of plea and
8 sentencing hearings, indicated that he had not taken any drugs or prescription
9 medications. *Answer*, Ex. J, p. 1. The court characterized Valenzuela's claims that
10 he did not understand the word "stipulated" as disingenuous "in light of his prior
11 criminal history and contact with the courts and lawyers in the past." *Id.*, p. 2. The
12 court also found disingenuous Valenzuela's claim that he had been promised certain
13 prison placements because "[n]o experienced lawyer would make such a promise
14 because any practicing criminal attorney knows that the sentencing court has no
15 jurisdiction over the Department of Corrections and where it houses prisoners or how
16 it classifies them." *Id.*, pp. 2-3. Finally, the court rejected Valenzuela's claim that he
17 was unaware of the amount of restitution because he and his counsel were provided
18 with a pre-sentence report and restitution documentation prior to sentencing and did
19 not request a hearing or object to the order. *Id.*, p. 3.

20       Valenzuela then appealed the trial court's decision and the Arizona Court of
21 Appeals denied relief. *Answer*, Ex. A. In its Memorandum Decision, the Court of
22 Appeals described the trial court's findings and concluded that the transcript of the

change of plea hearing supported the trial court's determination that Valenzuela had knowingly, voluntarily and intelligently entered into the plea agreement. *Id*., pp. 3-4. In reaching its conclusion, the court specifically noted that Valenzuela had denied that he was under the influence of drugs and medications and that he had stated that no one had used "force, threats or promises outside the terms of the agreement itself to gain his assent to it." *Id*., p. 4. The court also rejected Valenzuela's contention that he did not know of the restitution amount and that he would have rejected the plea if he had known, finding that he failed to object to the amount of the restitution order either before or at the sentencing hearing. *Id*.

Due process requires that a plea of guilty or no contest be voluntary, knowing and made with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). A plea is "involuntary" if it is the product of threats, improper promises, or other forms of wrongful coercion. *Id.* at 754-55. A plea is not intelligent where the defendant is without the information necessary to properly assess "the advantages and disadvantages of a trial as compared with those attending a plea of guilty." *Id*. at 754. A habeas petitioner bears the burden of establishing that his plea was not voluntary and intelligent. *Park v. Raley*, 506 U.S. 20, 31-34 (1992); *Little v. Crawford*, 449 F.3d 1075, 1081 (9th Cir. 2006) (petitioner must "overcome the presumption that he pled voluntarily and intelligently").

Even without relying on the deferential standards of AEDPA, the court finds that Valenzuela's constitutional rights were not violated in this case. In the last

1 reasoned decision on this claim, the Arizona Court of Appeals deferred to the trial
2 court's finding that Valenzuela, who affirmatively stated he was not under the
3 influence of drugs, was actually not under the influence. It can hardly be suggested
4 that it was unreasonable to reach this conclusion when Valenzuela indicated that he
5 was not under the influence and the court did not notice any behavior indicating he
6 might be. Also of note is the fact that Valenzuela has not indicated the source or type
7 of drug of which he was under the influence.

8       Valenzuela also has not overcome the presumption of the validity of his plea
9 by producing evidence that his lawyer promised he would be placed in particular
10 custody if he accepted the plea. As the Court of Appeals noted, Valenzuela indicated
11 at his change of plea hearing that no one had used force, threats or promises outside
12 the terms of the agreement itself to gain his assent to it. *Answer*, Ex. A, p. 4; Ex. L,
13 pp. 8-9 (transcript of change of plea). Additionally, as the trial court stated and the
14 Court of Appeals noted, no experienced lawyer would make such a representation.
15 *Id.*, Ex. A, p. 3; Ex. J, pp. 2-3. Factual determinations such as this by state courts are
16 presumed correct absent clear and convincing evidence to the contrary. *Miller–El v.*
17 *Cockrell*, 537 U.S. 322, 340 (2003). This presumption applies to findings made by
18 both the trial court and the court of appeals. *Sumner v. Mata*, 449 U.S. 539, 546–47
19 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th
20 Cir. 2001). Moreover, conclusory assertions will not suffice. *Id.* Under 28 U.S.C.
21 2254(d)(2), a state court decision "based on a factual determination will not be
22 overturned on factual grounds unless objectively unreasonable in light of the

evidence presented in the state-court proceeding." *Miller–El*, 537 U.S. at 340. Here, Valenzuela has not produced clear and convincing evidence that the Arizona courts' factual determination was unreasonable.

With regard to his claim that he did not understand that he was stipulating to a sentence of 11.5 and believed he could get a much shorter sentence, Valenzuela's argument is wanting. As the Court of Appeals noted . . . This is clear from the change of plea colloquy where Valenzuela affirmatively stated that he understood that "[t]he State and the Defendant stipulate that the defendant shall be sentenced to 11 and-one-half years in the Department of Corrections." *Answer*, Ex. L, pp. 4-5. Even if he truly did not know the meaning of the word stipulate, Valenzuela was certainly informed of the nature of the plea when the trial court explained that the agreement provided that he "shall be sentenced to 11 and-one-half years." Valenzuela has not asserted that he did not understand what the words "shall be sentenced" mean.

In Ground One, Valenzuela also asserts that his plea colloquy was defective because he was not informed that he would have to pay $7,404.49 in restitution to his victims. In Ground Two, Valenzuela contends that the restitution order rendered "illegally imposed." These arguments are unavailing. As a threshold matter, Valenzuela has not identified the clearly established federal law that was allegedly misapplied by the state courts. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 120 S.Ct. 1495 (2000). Accordingly, this Court cannot find that the state court's treatment of this claim was contrary to, or an unreasonable application of clearly

1 established Supreme Court law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (stating
2 that "so long as neither the reasoning nor the result of the state-court decision
3 contradicts [Supreme Court precedent,]" the state court decision will not be contrary
4 to clearly established federal law).

5 Even if there were authority that might support Valenzuela's claim, he cannot
6 overcome that the state courts, as a factual matter, found that he was informed of the
7 restitution after his change of plea, but before sentencing, and never objected to its
8 imposition or amount. *Answer*, Ex. J, p. 3. The Court of Appeals determined that his
9 failure to do so established that the amount of the restitution was not material to his
10 decision to accept the plea. *Id*., Ex. A, p. 4. Again, Valenzuela has not offered clear
11 and convincing evidence that would call this determination into question.

12 Additionally, the Ninth Circuit has held that where a defendant who is not
13 warned of the potential for restitution is nevertheless ordered to pay such restitution,
14 but in an amount less than the total potential criminal fine about which he was
15 warned, the arguable error is harmless. *United States v. Pomazi*, 851 F.2d 244, 248
16 (9th Cir. 1988), *overruled on other grounds by Hughey v. United States,* 495 U.S. 411
17 (1990); *United States v. Crawford*, 169 F.3d 590, 592-93 (9th Cir. 1999). In this case,
18 the plea agreement warned Valenzuela in bold print that he was subject to a fine of
19 up to $150,000 plus an 80% surcharge. *Answer*, Ex. C, p. 1. Although ordered to
20 pay restitution in the amount of $7,404.49, he was not subjected to any fine. Thus,
21 his actual financial burden at sentencing was far less than the potential penalty of
22

which he was warned. Even if the court had erred by not informing him of the prospect of a restitution order, such error was harmless.

Finally, Valenzuela cannot genuinely claim surprise as to the amount of the restitution order. The Plea Agreement provided as follows:

> **RESTITUTION:** The Defendant agrees to pay restitution to all the victims named in the original indictment, even if they are not named within the specific charge to which the Defendant is pleading guilty. The Defendant understands he/she is jointly and severally liable for the entire restitution amount(s). The Defendant specifically agrees to make restitution to the victim(s) for losses suffered as a result of the course of conduct of which the Defendant may only be part. **To be determined**.

*Answer*, Ex. C, p. 2. The original charges against Valenzuela consisted of the attempted murder, stabbing and robbery of the victim. *Answer*, Ex. B. The stabbing was alleged to have caused "serious physical injury" with "multiple stab wounds." *Id*. It is too much to ask this Court, and the state courts before it, to believe that Valenzuela, who had agreed to pay restitution, would be surprised that robbing someone and stabbing them multiple times would result in a restitution order substantially lower than the one actually imposed. In short, there is nothing in the Petition or the record that would compel this Court to find that the state court's treatment of this claim was objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

Based on the foregoing, the Court finds that the Arizona courts' rejection of Valenzuela's claims was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted.

### III. RECOMMENDATION

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **deny** Valenzuela's Amended Petition for Writ of Habeas Corpus (Doc. 5).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 10-471-TUC-FRZ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

Dated this 15th day of April, 2013.

Jacqueline M. Rateau
United States Magistrate Judge